# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FOX NEWS NETWORK, LLC, a Delaware Limited Liability Company, and DOES 1-10, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ANDREW BARACCO, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: Stanley Mosk Courthouse
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Los Angeles
111 North Hill Street, Los Angeles, California 90012

CASE NUMBER: *(Número del Caso):*
**21STCV41140**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Azar Mouzari, Beverly Hills Trial Attorneys, P.C., 468 N. Camden Drive, Suite 238, Beverly Hills, California 90210, 310-858-5567

| DATE: 11/08/2021 | Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by R. Clifton | , Deputy |
|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).*)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*


{SEAL}

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Fox News Network, LLC, a Delaware Limited Liability Company
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

**EX. A**
p. 12

For your protection and privacy, please press the Clear This Form button after you have printed the form. | Print this form | Save this form | Clear this form |

Electronically FILED by Superior Court of California, County of Los Angeles on 11/08/2021 05:42 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Timothy Dillon

Azar Mouzari, Esq. (State Bar No. 263461)
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel: 310-858-5567
Fax: 424-286-0963
Email: azar@bhtrialattorneys.com

Attorneys for Plaintiff ANDREW BARACCO

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| ANDREW BARACCO, an individual.<br><br>Plaintiff,<br>v.<br><br>FOX NEWS NETWORK, LLC, a Delaware Limited Liability Company, and DOES 1-10, inclusive.<br><br>Defendants. | Case No.: 21STCV41140<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Mr. Andrew Baracco ("Plaintiff"), alleges the following based upon information and belief:

## I. NATURE OF THE CASE

1. Plaintiff brings this civil rights action against Fox News Network, LLC, a Delaware Limited Liability Company, ("Defendant") seeking to put an end to the systemic civil rights violations committed by Defendant against Plaintiff.

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to access and read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" herein to refer to all people with visual impairments who meet the legal

definition of blindness in that they fall within the meaning of California's Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51, *et seq.* and have a visual acuity with correction of less than or equal to 20 x 200.

3. Plaintiff, and all other visually impaired individuals, are unnecessarily denied equal access to the same online information and services offered to others because Defendant's website, https://nation.foxnews.com/ and mobile application (collectively, the "Website"), and all subgroups of webpages contained in the Website are not fully accessible to screen-reading technology used by blind individuals. This relegates visually impaired customers of Defendant to a second-class experience. If Defendant's Website was accessible, then visually impaired individuals could independently access information relating to Defendant's services, with the same convenience available to others. In contrast with Defendant, many other businesses operate websites and mobile applications that are fully accessible to visually impaired individuals.

4. Upon information and belief, Plaintiff alleges that Defendant produces, markets, owns, operates and/or monetizes a Website that offers streaming services and media programming to the public, including individuals located within the County of Los Angeles, California.

5. Defendant's Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiff to have full access to the Website and independently access "Fox Nation" streaming and media programming services, and other services offered by Defendant online.

6. Defendant thus excludes the visually impaired from full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace

and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life for visually impaired individuals, allowing them to fully and independently access a variety of services, including streaming and media programming services.

7. Despite readily available methods to render websites fully accessible to all, such as the methods in use by other businesses, which make correct and proper use of alternative text, accessible forms, descriptive links, resizable text, and labels, Defendant has failed to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other visually-impaired individuals.

8. The California legislature has provided a clear, national mandate for the elimination of discrimination against individuals with disabilities when it enacted California's UCRA, Cal. Civ. Code § 51, *et seq.* Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Specifically, California state law mandates equal protection of persons with disabilities, requiring that places of public accommodation provide access to goods, services and facilities for persons with disabilities. *See* UCRA, Cal. Civ. Code § 51, *et seq.*

9. Unless Defendant remedies the numerous access barriers on its Website, Plaintiff will continue to be unable to independently navigate, browse, use, access important information on the Website. Because Defendant's Website is not equally accessible to blind and visually-impaired individuals, in violation of the UCRA, this complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law and to include monitoring of such measures, to update and

remove accessibility barriers on the Website so that Plaintiff may be able to independently and privately use Defendant's Website. This complaint also seeks compensatory damages to Plaintiff for having been subjected to unlawful discrimination.

## II. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action. This Court also has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the County of Los Angeles, in the State of California and because Defendant's offending Website is available across California.

11. Defendant has been and is committing the acts alleged herein through its Website that is available in the County of Los Angeles, and has been and is violating the rights of Plaintiff and other consumers with disabilities in this County, and has been and is causing injury to Plaintiff in this County. All events giving rise to Plaintiff's causes of action took place in the State of California, County of Los Angeles. Therefore, jurisdiction of this Court is proper.

12. Venue is proper in this Court because Plaintiff resides in the County of Los Angeles, Defendant conducts and continues to conduct a substantial and significant amount of business in this County, Defendant is also subject to personal jurisdiction in this County, and a substantial portion of the conduct complained of herein occurred in this County.

## III. PARTIES

13. Plaintiff, at all times relevant and as alleged herein, is a resident of Los Angeles, California.

14. Plaintiff is a blind, visually-impaired handicapped person. Plaintiff uses screen-reader software to access and operate websites and mobile applications. Given his past education, work experience and expertise with online technology, he is knowledgeable about various tools which allow visually impaired individuals to access websites, including various screen-reader software.

15. Plaintiff has tried to access streaming and programming services offered by Defendant on its Website. Despite numerous attempts, Plaintiff was unable to independently access such information on Defendant's Website independently and adequately. Plaintiff has been unable to access the information and services offered through Defendant's Website. He desires to use Defendant's Website, resources and tools and has the necessary computer technology to do so if it were fully accessible to the visually impaired.

16. The access barriers Plaintiff has encountered on Defendant's Website have deterred Plaintiff from making use of the services he should otherwise have access to using the Website.

17. The access barriers Plaintiff has encountered on Defendant's Website have deterred Plaintiff from utilizing services through Defendant's Website.

18. Plaintiff is informed and believes, and thereon alleges that Defendant produces, markets, owns, operates and/or monetizes a Website that offers streaming services and media programming to the public, including individuals located within the County of Los Angeles, California.

19. Defendant's Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiff to have full access to the Website and independently access "Fox Nation" streaming and media programming services, and other services offered by Defendant online.

20. Plaintiff is informed and believes, and thereon alleges that, at all relevant times, Defendant has continuously been doing business in Los Angeles, California.

21. Defendants' business transactions and/or establishments are within the jurisdiction of the State of California, and as such are obligated to comply with the provisions of UCRA, California Civil Code §§ 51, *et seq.*

22. Specifically, California state law mandates equal protection of persons with disabilities, requiring that places of public accommodation provide access to goods, services and facilities for persons with disabilities. *See* UCRA, Cal. Civ. Code § 51, *et seq.*

23. Defendant's Website is a service, privilege, or advantage, and, as such, must be equally accessible to persons with disabilities, including visually-impaired persons. *See* UCRA, Cal. Civ. Code § 51, *et seq.*

24. Through the Website, individuals may review information relating to and access streaming and media programming services.

25. The access barriers Plaintiff encountered on Defendant's Website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from full access to Defendant's Website. Similarly, the access barriers Plaintiff encountered on Defendant's Website have impeded Plaintiff's full and equal enjoyment of Defendant's services.

26. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

27. The true names or capacities, whether individual, corporate, associate or otherwise of defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said DOE defendants by such fictitious names.

28. Plaintiff is informed and believes, and thereon alleges that each of the defendants designated herein as a DOE is responsible for the unlawful acts as herein alleged, and Plaintiff will ask leave of the Court to amend this complaint to show its true names and capacities when same have been ascertained.

29. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned Defendants, and each of them, were the agents, servants and employees each of the other, acting within the course and scope of said agency and employment, with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions alleged herein were made known to and ratified by each of the Defendants (including any DOE defendant).

30. Defendant and each and every DOE Defendant shall be referred to collectively as "Defendants" hereafter.

## IV. FACTUAL ALLEGATIONS

31. Upon information and belief, Plaintiff alleges that Defendant produces, markets, owns, operates and/or monetizes a Website that offers streaming services and media programming to the public, including individuals located within the County of Los Angeles, California.

32. Defendant's Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiff to have full access to the Website and independently access "Fox Nation" streaming and media programming services, and other services offered by Defendant online.

33. Defendant thus excludes the visually impaired from full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer

technology is becoming an increasingly prominent part of everyday life for visually impaired individuals, allowing them to fully and independently access a variety of services, including streaming and media programming services.

34. It is undisputed that the Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and visually impaired individuals. When properly accessible, the Internet provides individuals with disabilities significant independence. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

35. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

36. Except for legally blind individuals whose residual vision allows them to use them to use magnification, screen reading technology is the only method which allows visually impaired individuals independent access to the Internet. In this case, Plaintiff can only access the Internet independently with the assistance of a screen-reader.

37. For the screen reader technology to function, the information on a website must be capable of being rendered into meaningful text. If the website content is constructed such that it cannot be rendered into meaningful text, visually impaired individuals are unable to access the same content available to sighted individuals because they cannot detect what is depicted on the screen and, for example, click where required to access further information and services.

38. There are well-established industry adopted guidelines for making websites accessible to visually impaired individuals. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility.

39. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them.

40. These guidelines recommend several basic and easily to implement components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and screen reader; ensuring that image maps are accessible; removing empty links or headings which are confusing; removing documents which do not allow screen-readers to properly read the text; and adding headings and links so that visually impaired people can easily navigate the site. Without these very basic components, a website will be inaccessible to visually impaired persons using screen readers.

41. In this case, based on information and belief, Plaintiff alleges that Defendants have a policy and practice of denying the visually impaired full access to their Website, including access to the services offered by Defendants through their Website. Due to Defendants' failure and refusal to remove access barriers to their Website, visually impaired individuals have been and are being denied equal access to Defendants' services offered to the public through their Website.

42. Defendants deny the visually impaired full access to services and information made available through their Website by preventing them from freely navigating the Website.

43. Defendants' Website contains access barriers that prevent free and full use by visually impaired persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text or text equivalent on graphics, inaccessible forms, the lack of adequate prompting and labeling, the denial of keyboard access, empty links and headings, inability to complete important tasks using the keyboard and screen reader alone, and content which is not fully readable or navigable using a screen reader.

44. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Defendants' Website that lack a text equivalent. The lack of Alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. Screen readers detect and vocalize Alt-text to provide a description of the image to a blind computer user. As a result, visually impaired customers of Defendants are unable to effectively determine what is on the Website and fully browse the site.

45. Defendants' Website also lacks prompting information and accommodations necessary to allow visually impaired shoppers who use screen readers to locate and accurately fill-out online information. Specifically, due to the lack of adequate and functional labeling, visually impaired customers cannot, for example, independently and fully access and utilize the Website.

46. Defendants' Website also includes numerous instances of empty links, labels and/or headings which prevent visually-impaired individuals from recognizing the function or purposes

of links, labels and/or headings contained in the Website. If a link, label or heading contains no text, the function or purpose of the link, heading or heading will not be presented to the user. This can introduce confusion for keyboard and screen reader users.

47. As another example of barriers present on Defendant's Website, there are several occurrences where functions cannot be performed using a keyboard and screen reader. This includes, but is not limited, to the section relating to Defendant's services.

48. Due to Defendants' Website inaccessibility, visually impaired customers of Defendants cannot independently investigate services offered by Defendants and make purchases via the Internet as sighted individuals can and do.

49. Defendants' Website thus contains significant access barriers which deny full and equal access to Plaintiff, who would otherwise use their Website and who would otherwise be able to fully and equally enjoy the benefits of Defendants' online streaming and programming services.

50. Plaintiff has personally patronized Defendants' Website in the past, and intends to continue to patronize Defendants' Website. However, unless Defendant is required to eliminate the access barriers at issue, and required to change their policies so that access barriers do not reoccur on Defendants' Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendants' Website.

51. Specifically, the last time Plaintiff attempted to do business with Defendants using their Website was in or around late 2021, and Plaintiff still encountered barriers to access on their Website. Despite past and recent attempts to do business with Defendants on their Website, the numerous access barriers contained on the Website and encountered by Plaintiff have denied Plaintiff full and equal access to Defendants' Website. Plaintiff, as a result of the barriers on the Website, continues to be deterred on a regular basis from accessing Defendant's website.

Likewise, based on the numerous access barriers Plaintiff has been precluded from the full and equal enjoyment of physical locations that offer Defendants' online streaming services.

52. If Defendants' Website was equally accessible to all, Plaintiff could independently navigate the website, review information concerning streaming services as well as select and access an online programming service.

53. Through his many attempts to use Defendants' Website, Plaintiff has actual knowledge of the access barriers that make these privileges, goods or services inaccessible and independently unusable by blind and visually-impaired people.

54. There are readily available and easy to implement guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics, including labels for each form control and text for all links, providing alternatives to inaccessible content and ensuring that all significant functions can be performed using a keyboard.  In addition, incorporating these basic changes and adding certain elements to Defendants' Website accessibility would not fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

55. Because maintaining and providing a website where all functions can be performed using a keyboard, would provide full, independent and equal accessible to all consumers, Plaintiff alleges that Defendants have engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.   Construction and maintenance of a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers.

56. Because Defendants' Website is not equally accessible, and because Defendants lack a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

57. Prior to the filing of the present Complaint, Plaintiff contacted Defendants on several occasions to inform them about the accessibility issues and provide them with an opportunity to cure the issues. Despite the opportunity to do so, Defendants failed to substantively respond to Plaintiff's communication and, similarly, failed to remedy the Website.

58. If Defendants' Website were equally and fully accessible to all, Plaintiff and similarly situated visually impaired people could independently view information on the Website, access details relating to Defendants' services and select online streaming and programming services via Defendants' Website.

59. Although Defendants may currently have centralized policies regarding the maintenance and operation of their Website, Defendants lack a plan and policy reasonably calculated to make the Website fully and equally accessible to, and independently usable by, the visually impaired.

60. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendants' Website in violation of their rights.

//

//

## FIRST CAUSE OF ACTION
### Violation of Unruh Civil Rights Act
### (California Civil Code §§ 51, 52, *et seq.*)
### (Injunctive Relief And Damages)

61. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph hereafter necessary or helpful to state this cause of action as though fully set forth herein.

62. The Unruh Civil Rights Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. *See* Cal. Civ. Code § 51(b).

63. Upon information and belief, Plaintiff alleges that Defendants produce, market, own, operate and/or monetize a Website that offers streaming services and media programming to the public, including individuals located within the County of Los Angeles, California.

64. Defendants' Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiff to have full access to the Website and independently access "Fox Nation" streaming and media programming services, and other services offered by Defendants online.

65. Upon information and belief, Defendants generate significant revenue from the services offered through their Website. Defendants' Website is a service provided by Defendants that is not fully accessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, or services that Defendants make available to the non-disabled public. Defendants are

violating the UCRA, Civil Code §§ 51, *et seq.*, by denying visually-impaired customers the services provided on their Website. These violations are ongoing.

66. Defendants' actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code §§ 51, *et seq.*, because, among other things, (1) Defendants have constructed, maintained, owned, monetized and/or operated a Website that is inaccessible to visually impaired individuals, such as Plaintiff; (2) Defendants have opted to maintain this Website in such an inaccessible form despite well-established and readily implementable industry guidelines for making websites accessible; (3) and Defendants have failed to take action to correct and rectify these barriers even after being on notice of the discrimination that such barriers may create for visually impaired individuals, such as Plaintiff.

67. Defendants are further violating the UCRA, Civil Code §§ 51, *et seq.*, because the conduct as alleged herein violates various provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, for the reasons set forth above. Under Cal. Civ. Code § 51(f), a violation of an individual's rights under the ADA also constitutes a violation under the UCRA. Defendants' discriminatory conduct alleged herein includes, *inter alia*, the violation of the rights of persons with disabilities set forth in Title III of the ADA and, therefore, also violates the Unruh Act. *See* Cal. Civ. Code § 51(f).

68. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm. Plaintiff is therefore entitled to injunctive relief remedying the discrimination. Plaintiff expressly limits the cost of all injunctive relief sought to $15,000 or less.

69. Plaintiff is also entitled to statutory minimum damages pursuant to UCRA, Civil Code § 52 for each offense. Plaintiff hereby expressly limits the total and cumulative amount sought for all offenses to a total of $34,999 or less.

70. Plaintiff is further entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays pray for judgment against Defendants, as follows:

A. A preliminary and permanent injunction enjoining Defendants from further violations of the UCRA, Civil Code §§ 51, *et seq.*, with respect to their Website, https://nation.foxnews.com/, and all of the webpages and urls contained therein;

B. A preliminary and permanent injunction requiring Defendants to take the steps necessary to make their Website readily and fully accessible to and usable by blind and visually-impaired individuals. Plaintiff expressly limits the cost of injunctive relief sought in sections A and B to $15,000 or less;

C. An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

D. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to California Civil Code § 52(a);

E. For pre-judgment interest to the extent permitted by law;

F. For costs of suit; and

G. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

| | |
|---|---|
| Dated: November 2, 2021 | BEVERLY HILLS TRIAL ATTORNEYS, P.C. |
| | *[signature]* |
| | Azar Mouzari, Esq. |
| | Attorney for Plaintiff |
| | ANDREW BARACCO |